# EXHIBIT "B"

# STIPULATION REGARDING POSTPETITION CREDIT, PREPETITION DEBT, ADEQUATE PROTECTION, AND SETTLEMENT AND RELEASE AGREEMENT

This STIPULATION REGARDING POSTPETITION CREDIT, PREPETITION DEBT, ADEQUATE PROTECTION, AND SETTLEMENT AND RELEASE AGREEMENT (this "**Agreement**") is entered into by and among Frontier Star, LLC, a Delaware limited liability company ("**Frontier Star**"), Frontier Star CJ, LLC, a Delaware limited liability company ("**Frontier Star CJ**," together with Frontier Star, each a "**Debtor**," and collectively, the "**Debtors**"), non-debtor Frontier Star I, LLC, a Delaware limited liability company, ("**Frontier Star I**," together with Debtors, the "**Frontier Entities**"), and Jason LeVecke, Andrea LeVecke, Carl LeVecke, and Neisha LeVecke, in their capacities as guarantors ("**Guarantors**") of all debts and obligations of the Frontier Entities under certain Continuing Personal Guaranties (the "**Guaranties**"), on the one hand, and Meadowbrook Meat Company, Inc. d/b/a/ MBM Corporation, a North Carolina corporation ("**MBM**"), on the other hand, each of which hereby compromise, agree, and stipulate to the following:

## RECITALS

WHEREAS, the Frontier Entities are franchisees operating approximately eight-one (81) Hardee's® and approximately eighty-four (84) Carl's Jr.® restaurants located throughout the states of Arizona, Texas, Illinois, Missouri, Kentucky, and Tennessee under franchise agreements with CKE Hardee's Restaurants, LLC and CKE Carl's Jr. Restaurants, LLC (together, the "**Franchisor**");

WHEREAS, as Hardee's® or Carl's Jr.® franchisees, each Debtor is required to comply with certain recipe and ingredient specifications dictated by their respective Franchisor;

WHEREAS, pursuant to its distribution agreements with Franchisor (or Franchisor's affiliates), MBM is the sole-source and exclusive national supplier to the Frontier Entities, and thus, MBM purchases, warehouses, and distributes substantially all the food items and related restaurant items, including, among other things, meat products, produce, paper products, and cleaning supplies (the "**Goods**") for the Frontier Entities' restaurants;

WHEREAS, the Frontier Entities' primary source of revenue comes from restaurant sales, specifically, the sale of food and beverages, and thus, the Frontier Entities are largely dependent on MBM's Goods to derive revenue and are required to purchase such Goods from MBM per their franchise agreements with their respective Franchisor; indeed, as the sole-source and exclusive national supplier to the Frontier Entities, MBM is uniquely equipped to distribute the fresh ingredients required in the Frontier Entities' businesses, and the Frontier Entities' businesses would collapse or be materially harmed (both financially and operationally) if MBM refused to ship the Goods to the Frontier Entities;

WHEREAS, MBM is not required to deliver any Goods to the Frontier Entities on credit by virtue of any executory contract with the Frontier Entities or otherwise; instead, the award of any credit terms is determined by MBM in MBM's sole and absolute discretion, and MBM may freely revoke any award of credit terms entirely by forcing wire in advance of delivery of Goods, which would severely and negatively affect the Frontier Entities' liquidity;

WHEREAS, in the ordinary course of their businesses before the Petition Date, the Debtors, non-debtor Frontier Star, which is the sole member of the Debtors, and MIH Admin Services, LLC, an Arizona limited liability company acting solely in its capacity as the management company for the Frontier Entities (the "**Management Company**"), together utilized a consolidated cash management system, whereby revenues generated from store sales are deposited into a centralized account (or accounts) held in the name of Frontier Star I at Wells Fargo Bank, National Association, and through which the Frontier Entities (or the Frontier Entities through their Management Company) processed and managed cash receipts, credit card payments, electronic funds transfers, and other transfers and disbursements for the Frontier Entities, including payment of MBM's invoices for the sale of Goods to the Frontier Entities (the "**Consolidated Cash Management Account**");

WHEREAS, on July 27, 2015 (the "**Petition Date**"), the Debtors filed voluntary petitions under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") with this Court;

WHEREAS, before the Petition Date, MBM had (consistent with its internal credit policies, which are established, administered, and changed in MBM's sole and absolute discretion) awarded the Debtors net 21-day terms, and upon learning of the Debtors' bankruptcy filings, MBM, through counsel, notified the Debtors and their counsel that MBM was considering converting the Debtors' credit terms to bank wire in advance of delivery;

WHEREAS, due to the cash flow, liquidity, and logistical issues that would be caused by the conversion of the Debtors' credit terms from net 21-day terms to bank wire (approximately $3.6 million of liquidity), the Debtors requested that MBM continue to award to them net 21-day terms after the Petition Date;

WHEREAS, subject to the terms and conditions hereof, MBM has agreed, in its sole and absolute discretion, to continue shipping to the Frontier Entities and to accommodate their request for net 21-day terms, if, and only if, the Court approves each of the conditions precedent and subsequent as set forth in this Agreement;

WHEREAS, on January 26, 2011, to secure all indebtedness of the Frontier Entities to MBM, each Frontier Entity executed a Purchase Money Security Agreement (the "**PMSAs**"), granting MBM purchase money security interests (the "**PMSIs**"), securing the debt the Frontier Entities owe to MBM by the Goods MBM delivers to the Frontier Entities and the proceeds thereof, including cash proceeds, which MBM perfected by filing UCC-1 financing statements and sending authenticated notices to other secured creditors of record; MBM is thus a secured creditor of the Debtors with a properly perfected security interest in and lien on the Goods purchased by the Debtors and proceeds thereof;

WHEREAS, as of the Petition Date, Frontier Star CJ owed MBM $1,664,576.26 (the "**Frontier Star CJ Prepetition Amount**"), and Frontier Star owed MBM $1,926,484.06 (the "**Frontier Star Prepetition Amount**") for a total sum of $3,591,060.32 (together, the "**Prepetition Amount**");

WHEREAS, of the Frontier Star CJ Prepetition Amount, $1,452,913.95 falls within the 20-day window under section 503(b)(9) of the Bankruptcy Code (the "**Frontier Star CJ Admin**

2

Case 2:15-bk-09385-EPB    Doc 34-3    Filed 08/11/15    Entered 08/11/15 16:16:42    Desc
Exhibit B - Stipulation re: Post-Petition Credit    Pre-Petition Debt    Adequate Pr    Page 3 of 9

Claim"), and of the Frontier Star Prepetition Amount, $1,425,611.73 falls within the 20-day window under section 503(b)(9) of the Bankruptcy Code (the "**Frontier Star Admin Claim**," together with the Frontier Star CJ Admin Claim, the "**Admin Claim**");

WHEREAS, because the Admin Claim is allowable as an administrative claim under section 503(b)(9) of the Bankruptcy Code, the Debtors are required, at the very latest, to pay the Admin Claim upon the effective date of their respective plans of reorganization per 11 U.S.C. § 1129(a)(9);

WHEREAS, of the Prepetition Amount, and in addition to the fact that MBM has (i) properly perfected PMSIs and (ii) an Admin Claim allowable under section 503(b)(9) of the Bankruptcy Code, MBM also holds a claim equal to $231,712.07 against Frontier Star CJ and a claim equal to $182,439.53 against Frontier Star (together, the "**PACA Claim**") under the Perishable Agricultural Commodities Act, 7 U.S.C. § 499, *et seq.*, as amended ("**PACA**"), which allows the imposition of a trust over Goods subject to PACA and over the proceeds received by the Frontier Entities for such Goods;

WHEREAS, in the Debtors' business judgment and given the fact that MBM has (i) properly perfected PMSIs and (ii) PACA claims (secured claims) against the Debtors, which would bar any preference claim, and after reviewing MBM's statutory defenses under sections 547(c)(2) and 547(4)(c)(5) of the Bankruptcy Code, among others, the consideration being extended by MBM in this Agreement, including the provision of significant post-petition credit, warrants the accommodation of the waiver of all claims against MBM under sections 544, 547, 548, 549 and 550 of the Bankruptcy Code;

WHEREAS, to encourage MBM to continue providing the Goods to the Frontier Entities, the Frontier Entities and Guarantors have reached this Agreement with MBM as expressly set forth below, which, if approved by Court order, will govern the treatment of MBM's prepetition claims and the Frontier Entities' and MBM's postpetition relationship;

WHEREAS, MBM and the Frontier Entities and Guarantors have engaged in arms' length negotiations regarding the Agreement; and

**NOW THEREFORE**, in consideration of the premises and mutual covenants contained herein and other valuable consideration, the receipt of which is hereby acknowledged, it is stipulated and agreed by and between the Frontier Entities, Guarantors, and MBM, as follows:

A. Each of the foregoing recitals is material to this Agreement and is hereby incorporated by reference as if fully set forth herein verbatim.

B. Subject to the Challenge Period (as defined in Paragraph C), the Frontier Entities hereby stipulate and agree that as of the Petition Date, (A) all of MBM's claims (i) constitute legal, valid, binding, and nonavoidable obligations of the Frontier Entities and (ii) are not, and shall not be, subject to any avoidance, disallowance, disgorgement, reductions, setoff, offset, recharacterization, subordination (whether equitable, contractual or otherwise), counterclaims, cross-claims, defenses or any other challenges of any kind or nature under the Bankruptcy Code or any other applicable law or regulation and (B)(i) MBM's PMSIs and liens constitute valid, binding, enforceable, nonavoidable, and properly perfected liens on the Goods MBM delivers to

3

Case 2:15-bk-09385-EPB    Doc 34-3    Filed 08/11/15    Entered 08/11/15 16:16:42    Desc
Exhibit B - Stipulation re: Post-Petition Credit    Pre-Petition Debt    Adequate Pr    Page 4 of 9

the Frontier Entities and the cash proceeds thereof, that, prior to the entry of this Agreement, were senior in priority over any and all other liens on the Goods and cash proceeds thereof, subject only to those liens that were valid, enforceable, properly perfected, non-avoidable, and senior in priority to the PMSIs as of the Petition Date, if any (the "**Permitted Liens**"); (ii) shall not be subject to avoidance, reductions, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaims, cross-claims, defenses or any other challenges under the Bankruptcy Code or any other applicable law or regulation; and (iii) are subject and subordinate only to the Permitted Liens, if any. The Frontier Entities irrevocably waive any right to challenge or contest in any way the perfection, validity, or enforceability of the PMSIs or the allowance, validity or enforceability of MBMs claims and security interest or the perfection thereof. The Debtors believe that the MBM's claims and liens constitute allowable, fully secured claims against the Debtors' estates.

        C.     The stipulations contained in Paragraph B shall be without prejudice to the right of any non-debtor party in interest, including any unsecured creditors' committee, to challenge MBM's PMSIs. Parties in interest, including any unsecured creditors' committee, shall have until the later of: (A) October 10, 2015; or (B) thirty calendar days after MBM files its proof of claim attaching the PMSAs (the "**Challenge Period**"), to commence the appropriate action challenging MBM's PMSIs. If no such action is timely filed, the Debtors' stipulations in Paragraph B hereof shall become final and binding on the Debtors, their estates (excluding any subsequently appointed chapter 7 trustee), and all parties in interest, including any unsecured creditors' committee.

        D.     This Agreement is subject to and shall be effective only upon entry of an order by the Bankruptcy Court approving the Agreement (the "**Effective Date**").

        E.     Except as otherwise provided in this Paragraph E, immediately upon the Effective Date, MBM shall be entitled to apply all amounts received (or to be received) from the Frontier Entities or the Management Company to its oldest outstanding invoice until the Prepetition Amount is unavoidably paid in full. To provide some liquidity relief to the Frontier Entities, however, MBM has agreed that payment of $100,000.00 of the Prepetition Amount may be deferred and paid in full within sixty (60) days of the effective date of the Debtors' plans of reorganization or liquidation.

        F.     Commencing on the Effective Date and following the application of funds as provided in Paragraph E, MBM will continue to ship Goods to the Debtors on net 21-day terms. If the Frontier Entities commit a default in payment to MBM of the Prepetition Amount and/or any outstanding postpetition invoice according to such invoice's terms, MBM shall have no obligation to ship the Goods on net 21-day terms, and the net 21-day terms may be revoked in MBM's sole and absolute discretion, including by reducing the Debtors' terms to bank wire in advance of load; provided, for the sake of clarity, that it shall be a default under this Agreement if the Debtors exceed or stretch the terms beyond net-21 days post-petition, and MBM shall provide Debtors written notice of such default with a three business day cure period; provided further, that if the Frontier Entities default in payment to MBM more than twice during a six month period, the net-21 day may be revoked in MBM's sole and absolute discretion.

4

G. Based the allocation of claims to each Debtor's estate (as set forth above): (1) the Prepetition Amount is a valid and outstanding obligation of the Debtors and shall be fully allowed as a secured claim; (ii) MBM shall also have an allowed claim under section 503(b)(9) of the Bankruptcy Code equal to the Admin Claim; and (iii) MBM shall also have a secured claim equal to $414,151.60 under PACA. Despite the foregoing, MBM shall only be entitled to a single satisfaction of the Prepetition Amount.

H. As adequate protection for MBM's PMSIs in Collateral (as defined in the PMSAs),[1] MBM is hereby granted, pursuant to Section 361(1), 363(e), and 552(b) postpetition liens (the "**Replacement Liens**") in such Collateral, including any cash collateral and postpetition assets, to the same validity, extent, and priority of MBM's prepetition PMSIs equal to the aggregate diminution in the value of such Collateral (whether such diminution is a result of, arises from, or is attributable to, the imposition of the automatic stay, use or disposition of cash collateral, or physical deterioration, consumption, use, shrinkage, disposition, or decline in market value or otherwise). The Replacement Liens granted to MBM shall be perfected by operation of law upon execution and entry of the Court order approving this Agreement. MBM shall not be required to take any action to validate or perfect such Replacement Liens.

I. The Debtors, for themselves and on behalf of their predecessors, successors, and assigns, and their bankruptcy estates, including any trustee or plan administrator, hereby fully, forever, and completely release and discharge MBM and its subsidiaries, affiliates, officers directors, agents, attorneys, representatives, predecessors, insurers, successors and assigns from any and all liability, claims, demands, causes of action, costs or expenses under sections 544, 547, 548, 549, and 550 of the Bankruptcy Code.

J. Frontier Star I hereby stipulates and acknowledges that, as the sole member of each Debtor, Frontier Star receives a material benefit, fair consideration, and reasonably equivalent value from MBM's provision of Goods to the Debtors, and that Frontier Star I, to the extent required by virtue of the existence of the Consolidated Cash Management Account, will ensure the Debtors' (or the Management Company's) performance of their obligations under this Agreement.

K. This Agreement does not limit, modify, or otherwise affect MBM's rights and remedies that existed before the Petition Date with respect to the Frontier Entities, including, without limitation, MBM's right to revoke the Debtors' credit terms if the Frontier Entities fail to make timely payment of the Prepetition Amount as set forth herein or timely payment of any postpetition invoice according to such invoice's terms. Specifically, in accordance with MBM's prepetition credit practices, the Frontier Entities shall not be entitled to any early pay incentives, unless otherwise entitled to such incentives under MBM credit policies. Nor does this

---

[1] Collateral means "all of the Debtor's right, title and interest in and to each of the following, at the restaurant locations wherever located and whether now or hereafter existing, or now owned or hereafter acquired or arising: (a) all Inventory; and (b) any and all products and proceeds of any of the foregoing (including, but not limited to, any claims to any items referred to in this definition, and any claims of the Debtor against third parties for loss of, damage to or destruction of, any or all of the Collateral or for proceeds payable under, or unearned premiums with respect to, policies of insurance) in whatever form, including, but not limited to, cash, instruments, general intangibles, accounts receivable, goods, documents and chattel paper.

5

Agreement create any executory obligation on the part of MBM after the Debtors emerge from bankruptcy or as to Frontier Star I or the Management Company. Further, nothing in this Agreement shall bind MBM to provide credit terms to any purchaser of the Debtors' assets in connection with a plan of reorganization or a sale under section 363 of the Bankruptcy Code or otherwise. MBM hereby reserves all its rights to underwrite and review any such purchaser's credit pursuant to its internal credit standards and may, in its sole and absolute discretion, decide to reduce credit terms to less than 21 days or deny credit terms altogether with respect to such purchaser.

L. The Guarantors each expressly reaffirm and ratify their representations, warranties, covenants, obligations, and agreements under their respective Guaranties and agree that notwithstanding anything to the contrary herein, their Guaranties remain valid, binding obligations with respect to any outstanding indebtedness owing to MBM.

M. The terms of this Agreement are not severable. If each term is not approved by the Bankruptcy Court, this Agreement shall be void and of no force and effect, unless waived by MBM in writing.

N. The Frontier Entities and MBM agree to execute and deliver, or to cause to be executed and delivered, all such instruments, and to take all such action as the other party may reasonably request in order to effectuate the intent and purposes of, and to carry out the terms of, this Agreement.

O. This Agreement constitutes the full and entire agreement among the Frontier Entities, Guarantors, and MBM with regard to the subject hereof, and supersedes all prior negotiations, representations, statements on the record, promises or warranties (oral or otherwise) made by MBM with respect to the subject matter hereof.

[Signature Pages on Next Page]

6

Case 2:15-bk-09385-EPB    Doc 34-3    Filed 08/11/15    Entered 08/11/15 16:16:42    Desc
Exhibit B - Stipulation re: Post-Petition Credit    Pre-Petition Debt    Adequate Pr    Page 7 of 9

[Signature Page to Agreement]

IN WITNESS WHEREOF, the Frontier Entities, Guarantors, and MBM have affixed their signatures hereto as of the date set forth in the Preamble hereof.

**FRONTIER STAR, LLC**

By: Frontier Star I, LLC

Its: Sole Member

By: _____
Jason LeVecke, Manager

**FRONTIER STAR CJ, LLC**

By: Frontier Star I, LLLC

Its: Sole Member

By: _____
Jason LeVecke, Manager

**FRONTIER STAR I, LLC**

By: _____
Jason LeVecke, Manager

**GUARANTORS:**

_____
Jason LeVecke, individually

_____
Andrea LeVecke, individually

_____
Carl LeVecke, individually

_____
Neshia LeVecke, individually

7

**MEADOWBROOK MEAT COMPANY**
**d/b/a MBM CORPORATION**

By: _____
Name: Barry Adams
Title: VP Corporate Controller

8